IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL DOCKET NO. 5:17-cr-00390 |
| | : | |
| EDWIN PAWLOWSKI | : | HONORABLE JUAN R. SANCHEZ |

### OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

**AND NOW**, Defendant Edwin Pawlowski, by and through counsel, Jack McMahon, Esquire, makes the following objections to the pre-sentence investigation report that was filed in this matter and asserts:

1. Paragraphs 33 and 66: There was no estimated value ever put in the proposal for contract. There was no evidence of any value of this Delinquent Real Estate Taxes contract.

2. Paragraph 35: There was no evidence of estimated value of this contract. Contract involved repairs for numerous pools not just Cedar Beach.

3. Paragraph 36: There was no estimated value of the Lighting Installation contract.

4. Paragraph 39: Pawlowski did not bypass the contracting procedures in place in the City of Allentown. The evidence showed that every contract went through the established procedure.

5. Paragraph 41: The sweeping of offices was not shown to be motivated by a fear of law enforcement but the fear of opposing political operatives getting and using such information against Mr. Pawlowski.

6. Paragraph 67: TEN did not make a $6,500 contribution to the campaign of Mr. Pawlowski. Mr. Regan (TEN) contributed $5,000, not to Mr. Pawlowski, but the Municipal League.

7. <u>Paragraph 89</u>: There was no evidence of what, if any, profit TEN would have made if contract went through.

8. <u>Paragraph 91</u>: The cyber security contract being in "reality unnecessary" is not true. The evidence revealed some thought it could be done in house and others saw some value in the analysis. It is ironic that during the trial the City of Allentown had a major cyber security issue that eventually cost one million to remedy.

9. <u>Paragraph 93</u>: Pawlowski never proposed or suggested a $100,000 contract to Jack Rosen.

10. <u>Paragraph 112</u>: McTish did not contribute $1,000 in hopes of getting Basin Street contract.

11. <u>Paragraphs 120 and 125</u>: Pawlowski did not select Spillman-Farmer. The authorized committee made the choice. It was not poor work design by Spillman-Farmer (a well known and reputable firm) but rather unforseen sink holes and unknown multiple pool shells that led to the increased cost.

12. <u>Paragraph 175</u>: The $1.6 million was an unknown and unforeseeable cost of sink holes and multiple pool shells. This loss is in no way related to any fraud or misconduct by Mr. Pawlowski.

13. <u>Paragraph 176</u>: The testimony revealed that Mr. Pawlowski only talked of purging messages and computers after he saw what was on the phone of Hadad from Ruchlewicz. These were statements that the tapes show were totally false and caused Mr. Pawlowski to try and eliminate any other false or misleading messages or texts. There is no evidence that this was to

evade law enforcement. It was done to eliminate potential information for political attacks in a major U.S. Senate campaign.

14. Paragraph 187: 1) Hadad only contributed two payments of $2,500 (total of $5,000) prior to any zoning or inspection expediting 2) there is no evidence that Northeast Revenue had a $300,000 benefit from the contract 3) there is no evidence that the benefit to TEN if contract had been finalized was $100,000 4) there is no evidence that Ciiber would have received any benefit (profit) from the small $35,000 contract. Nobody testified from Ciiber or representing Ciiber 6) the $1.6 million in additional costs is not in any way a loss attributable to any action by Mr. Pawlowski.

15. Paragraphs 188 and 193: The "loss" figure calculated at $2,058,640 is simply wrong and an incorrect reading of the guidelines. U.S.S.G. §2C1.1(b)(2) covers this issue. The dollar amount for the §2B1.1 table is determined by the greater of either the payment (bribe) or the loss to the Government from the offense.

Application note 3 (application of Subsection (b)(2)) spells out the interpretation of this section. The value is the <u>net</u> value. Therefore, in a contract situation if obtained by a bribe, the value for purpose of the guidelines is the profit to the company awarded the contract.

U.S.S.G. §2B1.1(3)(A)(iv) deals with pecuniary harm. The harm must be harm that the defendant knew or reasonably should have known was a potential result of the offense.

Using the above guideline rules the analysis in the instant case should be as follows:

    1)    $5,000 for two payments from Hadad for zoning and inspection expediting

    2)    $5,000 KilKenny payment in connection with Northeast Revenue. No evidence of <u>profit</u> produced pursuant to U.S.S.G. §2C1.1(b)(2)

      3)      $0 for TEN.  No money was paid by anyone from TEN for purpose of obtaining this contract.  Mr. Regan did not testify and he only contributed $5,000 for Municipal League not to Defendant's campaign

      4)      $18,749 for loss to Johnson Controls for their preparation for contract

      5)      $0 for Ciiber because no evidence was ever shown as to potential <u>profit</u> from this contract.

      6)      $3,640 for profit on Basin Street contract.

      7)      $0 for Spillman-Farmer.  Mr. Biondo testified that he did not contribute a single dollar to Mr. Pawlowski.  There was no testimony regarding <u>profit</u> as is required under U.S.S.G. 2C1.1(b)(2) and application note 3.  Any extra costs due to sink holes and multiple pool shells was clearly not reasonable foreseeable by Mr. Pawlowski, since it wasn't even foreseeable to any of the pool experts bidding on project (U.S.S.G. §2B1.1 - application note 3(iv))

The total loss then for purposes of §2B1.1 table is $32,389.  Pursuant to §2B.1(b) this would result in adding 4 points to the base offense level of 14.

      16.  <u>Paragraph 197</u>: The evidence of requesting others to delete or purge texts or messages was as a direct result of Mr. Pawlowski becoming aware of the lies being told by Mr. Ruchelwicz to Mr. Hadad about assuring him of getting specific contracts.  There is no evidence that Mr. Pawlowski was aware of any official investigation.  In fact, the testimony demonstrated a real fear of political opponents, as opposed to law enforcement, obtaining the information and using it in political attacks.  U.S.S.G. §3C1.1 talks of willfully obstructing the Government and application note 4(D) indicates that there has to be an awareness of the official investigation before this section applies.

**WHEREFORE**, Counsel respectfully submits these objections to the pre-sentence investigation report in the above captioned case.

Respectfully submitted,

Date:  June 22, 2018						/s/ Jack McMahon
								Jack McMahon

## CERTIFICATE OF SERVICE

      The undersigned hereby certify that on this date a copy of the foregoing Objections to Presentence Investigation Report was served by the Court's electronic case filing system upon the following:

Anthony Wzorek, AUSA
Michelle Morgan, AUSA
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106


Date:  June 22, 2018                                        /s/ Jack McMahon
                                                                              Jack McMahon