IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL DOCKET NO. 5:17-cr-00390 |
| | : | |
| EDWIN PAWLOWSKI | : | HONORABLE JUAN R. SANCHEZ |

SENTENCING MEMORANDUM

Defendant Edwin Pawlowski is scheduled to be sentenced September 5, 2018.  This Memorandum is being submitted on behalf of the Defendant prior to imposition of sentence.

18 U.S. Code § 3553(a) sets out the factors to be considered by this Court.

(1)     The History and Characteristics of the Defendant

Mr. Pawlowski is fifty-three years old and has never been arrested in his life.  His life and service have been remarkable and admirable.

Mr. Pawlowski comes from a humble yet normal upbringing.  His parents ran a Polish restaurant in Chicago with his father the bartender and his mother the cook.  He has one sibling, an older sister, who has been employed by a cosmetic company for over thirty years.

Mr. Pawlowski's educatonal history demonstrates early on his dedication to service and the community.  He graduated from Moody Bible Institute with a degree in pastoral studies.  Pastoral studies is a program that entails giving spiritual guidance to others.  He next earned a master's degree in urban planning and policy.  Again, a degree designed to help and assist the building up and improving city communities.

Mr. Pawlowski's employment history further demonstrates the mentality of service and helping others.  His first employment was a community director for Ashburn Community Project

on the west side of Chicago.  His next employment was again helping others as a community and tenant liaison for Lutheran Social Services in Des Moines, Illinois.  After this employment came a job with Windows of Opportunity, Inc. which was set up to assist public housing residents with the Chicago Housing Authority.  Next was another service job, Alliance for Building Communities in Allentown which served the developmental and management needs of housing developments.  Not surprisingly his next job was again a service and community job as director of the City of Allentown Department of Community and Economic development.  His last job was of course being the four time elected Mayor of the City of Allentown.

      The common denominator of all his employment was not enriching himself, rather enriching the community and making people's lives better and more fulfilling.  Of course, Mr. Pawlowski made a living at these jobs but he never made career moves based on money or personal enrichment.  He was making $77,575 as Director of Community Development when he sought the position of Mayor with an annual salary of $61,000, a 21% decrease.

      Mr. Pawlowski's entire educational history and employment history demonstrates a deep concern for the plight of others or as the Jesuits say "men for others."  Lining his personal pockets or living the high life has never been a motivator in the life of Ed Pawlowski.  After two successful terms as Mayor and transforming the city into a new and vibrant municipality, Mr. Pawlowski had employment and economic opportunities presented to him that could have tripled his salary.  Mr. Pawlowski never acted on any of these opportunities because service, development and helping his community was always his driving force.  This Court heard on numerous tapes his motivation for running for the United States Senate which was the genesis of this case.  Mr. Pawlowski wanted to be a Senator who would be a real spokesperson and activist

for the people of Pennsylvania.  This motivation of improving the lives of Pennsylvanians is totally consistent with everything Mr. Pawlowski had done in his life both in his education and in his employment.

Ed Pawlowski lived a modest and humble lifestyle.  He has lived for many years in modest row home in the heart of the city.  His car of choice was a Toyota Corolla.  His two children went to public school and his wife of thirty years also shares Mr. Pawlowski's service mentality by her work as a social worker for the Center for Humanistic Change in Allentown.  Thirty years of a successful marriage that was heavily influenced by their joint commitment to service and the community.

This desire to improve the community and help others is probably best manifested by the astonishing transformation of Allentown.  Mr. Pawlowski took a decaying and almost bankrupt city and turned it into a thriving and vibrant place to live.  The PSI lists some of the many awards and accomplishments of Mr. Pawlowski but this Court heard it over and over again from almost every witness what Mr. Pawlowski did for Allentown and its people was nothing short of a miracle.  Building and construction came back, jobs came back and the quality of life for all in Allentown was transformed.  I remember the one witness who stated he only wished his deceased father, who loved Allentown, could comeback and see all that has transpired.

In summary then the history and character of Ed Pawlowski is extraordinary and admirable.  He is a family man, a religious man who has lived a modest lifestyle.  It is a story of a man who has eschewed the race for the brass ring of money and fortune for a life dedicated to the service of others.

The history and character of Mr. Pawlowski is further evidenced by the fact, despite a pending federal indictment, the people of Allentown elected him to a fourth term. The action of electing him for the fourth time speaks volumes to the great things he has done for the community of Allentown.

Also, after conviction, this office was flooded with letters of support and letters attesting to the character of Mr. Pawlowski. (See attached letters)

(2)  The Nature and Circumstances of the Offense

First and foremost, not one dime of any of the money involved in this case was for lining the pockets of Mr. Pawlowski personally. Unlike most corruption cases, the actions of Mr. Pawlowski did not personally enrich him in any way. He did not get money to pay his children's education costs, he did not get any fancy trips, he did not get any bags of cash, he received no expensive gifts and he did not get any funds to enhance his lifestyle. Campaign contributions only and they were so he may have a chance to be an activist United States Senator and continue to help others, as he did in Allentown, except on a larger scale. The motivation behind this crime was not personal gain. Unfortunately Mr. Pawlowski learned in his ill-fated Governor campaign that good ideas and solutions to problems do not trump money. Mr. Pawlowski was not good at raising money and this made his dream of bringing his successful ideas and concepts to an even larger stage almost impossible. This lack of talent for raising money led Mr. Pawlowski to be influenced by a narcissistic reprobate named Mike Fleck. Mr. Fleck is a historical coniver who the Court heard in tapes, unrelated to Mr. Pawlowski, was talking and bragging about his corrupt abilities with a Government undercover agent long before this Senate campaign.

Mr. Pawlowski did chose Mr. Fleck and Mr. Pawlowski did rely on the person he chose. Mr. Pawlowski is a big boy and he alone is responsible for that choice and that reliance. Mr. Pawlowski, in his fixated desire to raise money to have a chance to bring his agenda to bigger audience, lost perspective and objectivity when it came to Mr. Fleck. He believed in him and relied on him and went in directions totally out of character for the true man Mr. Pawlowski has always been.

In a fair analysis of this entire situation no one should forget the following:

A) "He's as straight as they come" - Mike Fleck August 28, 2013

B) "You're a moral person, you don't shake people down" - Fleck to Pawlowski December 15, 2013

C) "Ed's never done anything wrong - - -" - Mike Fleck March 12, 2015

D) "I'm not a pay to play guy and if that is what he wants - then screw him" - Ed Pawlowski June 3, 2015

E) "We shouldn't do anything that isn't ethical, is my point" - Ed Pawlowski June 29, 2015

F) "All of my people have be boned in Allentown" - Jim Hickey

G) "Get down and dirty... Ed's never done that" - Jim Hickey

H) "Not getting bang for my buck in Allentown..." - Matt McTish

These are words of real people in real time that reflect the type of person Ed Pawlowski was and the reputation that Allentown had as a pay to play municipality.

Do those statements mean nothing? Are we to simply disregard because they don't fit the overall narrative that is trying to be portrayed. To do so I believe would be unfair and disingenuous in trying to assess the true nature and circumstances of this crime.

An analysis of the nature of these crimes must have a component of the harm caused to citizens of Allentown that Mr. Pawlowski has helped in such an extraordinary way.

<u>Ramzi Hadad Counts</u>: The conduct in these counts was merely expediting simple zoning and inspection matters.  Both the zoning and inspection were done by the right individuals and were done by the proper standards.  Both of these actions were properly approved and led to further business construction for the city of Allentown.

<u>Ciiber</u> (potential contract): This contract was never executed because Ciiber never provided the proper insurance documents.  There was no loss of any money to the citizens of Allentown.  Ironically, part of the Government's theory in this matter was that the city did not need an outside evaluation for cyber security.  While the trial was going on a major cyber attack occurred and is still being worked on to the tune of $1.5 million.  (See attached article)

<u>Northeast Revenue Counts</u>:  Northeast Revenue did a tremendous job for the city of Allentown.  After a slow start and prodding by Mr. Pawlowski, Northeast Revenue began bringing in revenue for the city of Allentown at a far greater rate than the previous law firm.  Northeast Revenue was a well known and widely used collection service that did an excellent job for the citizens of Allentown.

<u>TEN Lighting</u>: This contract was never executed and no money of Allentown was spent on this contract.  The Contract was terminated due to the FBI's City Hall search, and as such, to this day the LED replacement that was contemplated by the contract has not yet occurred.  TEN was not some fly-by-night company.  They were an experienced, reputable company who did all the lighting successfully in Bethlehem and Harrisburg.  Absent the raid the citizens of Allentown would have a new and modern lighting system in place in their city.  A lighting system that

would save the city vast amounts of electrical costs every year.

<u>McTish Matter</u>: The only matter that city paid out for was the Basin Street project. It was paid to McTish, an experienced contractor with city, who did the job successfully.

<u>Norris McGlaughlin, Stevens & Lee and Dillworth</u>: Not one of these law firms received any additional legal work or money from the City of Allentown as a result of the charged conduct.

<u>Spillman-Farmer</u>: This was also a highly reputable and experienced pool contractor. This company was selected by a proper city committee who clearly felt that they had the skill and ability to do this job. The job had unexpected and unforeseeable problems with double shells that created extra expense. Any company selected would have faced the same contracting problems and issues.

In conclusion then, very little of the charged conduct had any adverse effect of the citizens of Allentown or the finances of Allentown.

      (A)    <u>The Seriousness of the Offense, Promoting Respect for the Law and to Provide a Just Punishment</u>

Obviously these offenses are serious. Multiple corruption convictions should definitely be viewed as significant and worthy of punishment. We are asking the Court in analyzing the seriousness of these offenses to consider the motivation was not personal profit and the economic harm was minimal and the positive effect that some of these matters had on the city (Hadad, McTish and Northeast Revenue). In fact, if Ciiber had gone through the city may have saved $1.5 million and if TEN had gone through the citizens would have state of the art lighting at a greatly reduced cost. Nothing done caused any irreparable harm to the City of Allentown.

      (B)      <u>To Afford Adequate Deterrence</u>:

The goal of deterrence is obviously for someone similarly situated to look at the result of the Pawlowski case and choose not to engage in similar conduct.  Another politician looks at what happened to Pawlowski and decides improper conduct is not worth it.  Any one else similarly situated is going to see that Mr. Pawlowski lost his elected job.  Mr. Pawlowski lost his standing in the community.  Mr. Pawlowski lost his pension.  Mr. Pawlowski, an otherwise decent man, is going to go to jail and have his freedom restricted and the corresponding loss of his normal family contact.

If this isn't enough to deter another then whether its four, five or ten years is irrelevant.  It is simply absurd to say that someone similarly situated would engage in improper conduct for risk of five years in jail verses the risk of ten years in jail.  Arithmetic deterrence is simply a false concept that is not born out by reality or common sense.  This fallacy of deterrence by number is nothing more than the criminal justice system reverting to some sort of visceral, cruel and unproductive punishment.  Retribution is not Justice.  Sending people to prison for long periods of time has been proven over and over again to be an ineffective way to deter crime.

      (C)      <u>Protect Public From Further Crimes of the Defendant</u>:

Based on all presented about Mr. Pawlowski it is clear that the instant conduct was situational and an aberration.  Also, he is no longer able to hold public office so the opportunity to commit further such crimes is non-existent.

      (D)      Need to Provide Defendant With Education, Vocational Training and Medical Treatment

Mr. Pawlowski has no such needs. He's an educated professional with no serious medical issues. Mr. Pawlowski has no substance abuse issues and has not had a drink in thirty years.

      (E)      (A)(6) The Need for Unwarranted Sentence Disparities among Defendants with Similar Records and Who Have Been Found Guilty of Similar Conduct

To determine unwarranted sentence disparities it is incumbent on the Court to know what sentences have been given out for defendants similar to Mr. Pawlowski, i.e., elected politicians with no record convicted of some sort of corruption while in office. Attached to this Memorandum is a chart prepared encompassing this group of individuals.

A review of this information reveals sixty-one different cases of some sort of political corruption. The maximum sentence in this entire computation is ten years. <u>U.S. v. Chaka Fattah</u> was an Eastern District political corruption case in which Mr. Fattah received one hundred and twenty months. However, parts of that case were reversed by the Third Circuit and Mr. Fattah will have to be resentenced. The only other ten year sentence was <u>U.S. v. LeLand Beloff</u> in 1986. However, this case was a bit more than simple political corruption because it involved use of the Philadelphia mob, Nicodemo Scarfo and extortion. In <u>U.S. v. Vincent Fumo</u>, the defendant was convicted of one hundred thirty-seven counts of corruption in the Eastern District. The defendant in that case was using his office for personal financial benefit. Mr. Fumo, after appeal, received sixty-months. <u>US. v. Skrepank</u> was an extensive pay to play scenario with Mr. Skrepank receiving twenty-four months. <u>U.S. v. Preate</u>, was a mail fraud case involving campaign

contributions.  Mr. Preate served twelve months in federal prison.  U.S. v. Gigliotti, was a federal extortion, mail fraud and tax evasion by a State representative.  Mr. Gigliotti received forty-six months.  U.S. v. Wayne Bryant, was a federal case of mail fraud and corruption by New Jersey State Senator.  Mr. Bryant received forty-eight months in jail.  U.S. v. Van Pelt, was bid rigging case involving bribery by a New Jersey State Senator.  Mr. Van Pelt received forty-eight months in federal prison.  U.S. v. Coniglio, was a mail fraud and extortion by a New Jersey State Senator.  Mr. Coniglio received twenty months confinement.

The chart provided with this Memorandum and some of the specific corruption cases cited are the baseline from which the sentencing factor of unwarranted sentence disparities should be evaluated.  Only two cases out of all cited reached one hundred twenty months.  Beloff involved the mob and Fattah is to be resentenced after appeal.

**CONCLUSION**

Before the Court for sentencing is a man of clearly excellent character.  His life has been one of commitment and service that has brought tremendous changes and benefit to the lives of so many.  This is not a case of a politician using his elected office to selfishly enrich his personal lifestyle.  Ed Pawlowski is a good man.  Ed Pawlowski has always been committed to the community and uplifting the lives of others.  Ed Pawlowski is a committed and loving husband.  Ed Pawlowski is dedicated and impactful father.  Ed Pawlowski is a legend to those less fortunate in Allentown.  Ed Pawlowski is a man of faith who lives that faith in his "men for others" mentality.  Caging this type of man for the types of crimes previously discussed does not keep us safe or protect society in any way that is productive.  Long incarceration in this case is

simply knee jerk retribution and an inhuman simplistic reaction that, by any truly compassionate analysis, is not justice.

                                                  Respectfully submitted,

Date:  August 22, 2018                /s/ Jack McMahon
                                                  Jack McMahon

## CERTIFICATE OF SERVICE

      The undersigned hereby certify that on this date a copy of the foregoing Sentencing Memorandum was served by the Court's electronic case filing system upon the following:

Anthony Wzorek, AUSA
Michelle Morgan, AUSA
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106


Date:  August 22, 2018                        /s/ Jack McMahon
                                                                                     Jack McMahon