IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-390-1 |
| | : | |
| EDWIN PAWLOWSKI | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.** **May 18, 2020**

Edwin Pawlowski, who is currently serving a 180-month sentence for corruption-related offenses, has filed an emergency motion for temporary release to home confinement pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1). Pawlowski is an inmate in the Federal Correctional Institution (FCI) in Danbury, Connecticut, a low-security prison that is experiencing a significant outbreak of COVID-19, the highly contagious respiratory disease caused by the most recently discovered coronavirus. Pawlowski has several underlying medical conditions that place him at high risk of severe illness from COVID-19, should he contract the disease. In light of the outbreak at FCI Danbury and the conditions of his confinement at the prison, Pawlowski believes it is highly probable he will become infected with COVID-19 if he remains incarcerated and highly probable that the disease could be fatal because of his medical condition. He therefore seeks temporary release to home confinement pending resolution of his appeal from his conviction and sentence or until the conditions at FCI Danbury with respect to COVID-19 improve.

Pawlowski's situation is concerning. The Court, however, lacks the authority to grant the relief Pawlowski seeks. The compassionate release statute authorizes a sentencing court, in appropriate circumstances, to "*reduce* [a defendant's] term of imprisonment." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). It does not permit a court to order a defendant's temporary

release. To grant Pawlowski relief under the statute, the Court would have to reduce the 180-month term of imprisonment imposed in this case to time served, or approximately 19 months. Because a reduction of this magnitude is inappropriate in the circumstances of this case, the Court will deny Pawlowski's motion. Although the Court lacks authority to grant Pawlowski temporary release, the Bureaus of Prisons (BOP) possesses the authority to do so under the furlough statute, 18 U.S.C. § 3622, and/or under 18 U.S.C. § 3624 and the CARES Act. Nothing in this Memorandum is intended to preclude or discourage the BOP from exercising its authority to temporarily release Pawlowski on home confinement until the COVID-19 crisis abates.

**BACKGROUND**

On March 1, 2018, following a six-week jury trial, Pawlowski, the former mayor of the City of Allentown, Pennsylvania, was convicted of 38 counts of corruption-related offenses arising out of his orchestration of a wide-ranging pay-to-play scheme while in public office to fund his campaigns for Governor of Pennsylvania and the United States Senate.[1] The scheme involved various sub-schemes whereby Pawlowski, directly and through his operatives, agreed to steer City contracts or provide other favorable official action to companies, law firms, and individuals in exchange for campaign contributions and other items of value. In total, Pawlowski was convicted of one count of conspiracy, nine counts of federal program bribery (soliciting), six counts of mail fraud, six counts of wire fraud, four counts of honest services wire fraud, two counts of honest services mail fraud, three counts of Travel Act bribery, and seven counts of making false statements.

[1] The jury convicted Pawlowski of 47 counts, but nine of these counts were dismissed after trial, five on the Government's motion and four on Pawlowski's motion for judgment of acquittal.

On October 23, 2018, after carefully considering the factors set forth in 18 U.S.C. § 3553(a), this Court sentenced Pawlowski to a total of 180 months of imprisonment, a sentence within the advisory Guidelines range of 151 to 188 months. The Court denied Pawlowski's motion for bail pending appeal, and Pawlowski began serving his sentence. Pawlowski renewed his motion for bail pending appeal before the Third Circuit Court of Appeals, which denied the motion in February 2019.

Pawlowski again sought bail pending appeal in the Court of Appeals on March 20, 2020, in light of the outbreak of COVID-19 in Connecticut and his underlying medical conditions. On March 31, 2020, the Court of Appeals denied the motion without prejudice to renew the request should conditions change. Pawlowski renewed his motion on April 2, 2020, in light of the outbreak of COVID-19 at FCI Danbury. On May 4, 2002, the Court of Appeals denied the motion because Pawlowski had not met the standard for bail pending appeal. The Court of Appeals noted, however, that the denial was without prejudice to Pawlowski "pursuing other relief to which he may be entitled in the District Court in the first instance, such as release under 18 U.S.C. § 3582(c)(1)." Order, *United States v. Pawlowski*, No. 18-3390 (3d Cir. May 4, 2020). Pawlowski filed the instant emergency motion the same day.[2] The Government responded on May 8, 2020, and Pawlowski filed a reply on May 11, 2020. On May 12, 2020, with the consent of the parties, the Court heard argument on the motion by telephone conference.[3]

---

[2] Although the Court of Appeals retained jurisdiction over Pawlowski's case, this Court may consider Pawlowski's emergency motion pursuant to Federal Rule of Criminal Procedure 37(a). That Rule allows a court, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," to "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

[3] Under Federal Rule of Criminal Procedure 43, a defendant's presence is not required for a proceeding that "involves the correction or reduction of sentence under Rule 35 or 18 U.S.C.

Pawlowski seeks temporary release due to his vulnerability to COVID-19 at FCI Danbury. Pawlowski is 55 years old and has several underlying health conditions that place him at higher risk of serious illness from COVID-19. Pawlowski's medical records from FCI Danbury reflect that his current medical conditions include the following: dyspnea (i.e., shortness of breath) with a history of chronic obstructive pulmonary disease (COPD) and sleep apnea, for which he uses a CPAP (continuous positive airway pressure) machine; hypertensive heart disease without heart failure, for which he has been prescribed medication (aspirin and Lisinopril); and a herpesvirus infection in his right eye, for which he has been prescribed medication, including the antiviral drug acyclovir, which he contends results in a compromised immune system. Medical records provided by Pawlowski's counsel reflect that Pawlowski was hospitalized in March 2019 after complaining of chest pain and after an EKG performed in the prison showed abnormal results. In addition, as a result of a pulmonectomy he underwent decades ago, while in his 20s, Pawlowski currently has only one lung. The Government notes Pawlowski's medical conditions appear to be well managed by medication. But several of these conditions are among the medical conditions the Centers for Disease Control and Prevention (CDC) has identified as risk factors for severe illness from COVID-19. *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated May 14, 2020) (identifying COPD, prolonged use of "immune weakening medications," and serious heart conditions, including "pulmonary hypertension," as serious

---

§ 3582(c). Fed. R. Crim. P. 43(b)(4). At the outset of the May 12 telephonic argument, Pawlowski's counsel represented that Pawlowski agreed his presence was not necessary.

underlying medical conditions that may put people at higher risk for severe illness from COVID-19).[4]

Pawlowski also asserts he is at increased risk of contracting COVID-19 at FCI Danbury, which is experiencing a significant COVID-19 outbreak. There have been cases of COVID-19 at FCI Danbury since at least early April when the Attorney General of the United States identified the prison as one of three facilities then experiencing "significant levels of infection" and directed the BOP to give priority to these institutions in exercising its authority to use home confinement to move vulnerable inmates out of BOP facilities. Emergency Mot. Ex. 1, ECF No. 291-1 (April 3, 2020, Memorandum from the Attorney General to the Director of the BOP regarding increasing use of home confinement at institutions most affected by COVID-19). According to the BOP website, there are currently 34 inmate cases and five staff cases of COVID-19 at FCI Danbury. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 18, 2020). In addition, the BOP reports that 48 inmates and 55 staff have recovered from the disease, and one inmate has died. *Id.*[5]

---

[4] Although it is not clear that Pawlowski suffers from "pulmonary hypertension," which the CDC has identified as a risk factor, there is evidence that hypertension is a risk factor, particularly when combined with another underlying health condition. *See United States v. Rodriguez*, No. 03-271-1, 2020 WL 1627331, at *7 & n.15 (E.D. Pa. Apr. 1, 2020) (discussing research regarding hypertension and COVID-19); *cf. Coronavirus Disease 2019 Basics, COVID-19 and Hypertension*, Ctrs. for Disease Control & Prevention, https:// www.cdc.gov/coronavirus/2019-ncov/faq.html (last updated May 12, 2020) ("Although many people who have gotten severely ill from COVID-19 have high blood pressure, they are often older or have other medical conditions like obesity, diabetes, and serious heart conditions that place them at higher risk of severe illness from COVID-19.").

[5] FCI Danbury consists of three facilities—the low-security men's prison where Pawlowski is housed, which houses about 719 inmates; a minimum-security women's camp which houses about 134 inmates; and a low-security women's satellite prison, which houses about 131 inmates. *Martinez-Brooks v. Easter*, No. 20-569, 2020 WL 2405350, at *4-5 (D. Conn. May 12, 2020).

At FCI Danbury, Pawlowski is housed in a dormitory-style housing unit of about 70 men with inmates sleeping in bunk beds spaced less than six feet apart (the spacing recommended by the CDC for social distancing to reduce the risk of spreading disease). Given the configuration of the dormitory-style housing units, the district judge presiding over a habeas class action against FCI Danbury recently observed that "true social distancing appears to be unachievable at FCI Danbury, creating an environment where the risk of transmission is significantly heightened." *Martinez-Brooks*, 2020 WL 2405350, at *5. Pawlowski reports that every unit at the prison has had at least one inmate test positive. He also argues the reported numbers likely understate the scope of the outbreak because the prison is not testing asymptomatic inmates.

The Government reports that FCI Danbury has implemented significant measures to address the COVID-19 crisis and mitigate the risk of transmission in the prison pursuant to the BOP's Action Plan for COVID-19. These measures are summarized in a declaration from the Warden of FCI Danbury submitted in the habeas class action against the prison. *See* Opp'n Attachment A, ECF No. 293-1. They include implementing enhanced cleaning and sanitizing measures; conducting inmate and staff screening, including daily temperature checks for inmates; requiring inmates and staff to wear masks; and modifying operations so that inmates are, in effect, sheltering in place with their assigned housing units, receiving meals in their housing units and receiving services and recreation only with members of their housing units. *See* Opp'n 9-10, ECF No. 293. FCI Danbury has also taken steps to isolate inmates who are symptomatic or test positive. *Id.* at 10. The petitioners in the habeas class action dispute the efficacy of these measures. *See* *Martinez-Brooks v. Easter*, No. 20-569, 2020 WL 2405350, at *4 (D. Conn. May 12, 2020) (noting "[t]he extent to which the Warden has implemented adequate measures to control the COVID-19 outbreak at FCI Danbury and protect inmates is hotly disputed").

**DISCUSSION**

A sentencing court has limited authority to modify a term of imprisonment it has imposed. A court may not modify a term of imprisonment, except as expressly permitted by statute or by Federal Rule of Criminal Procedure 35. *See United States v. Washington*, 549 F.3d 905, 916 (3d Cir. 2008) (recognizing that 18 U.S.C. § 3582(c) and Rule 35 "define the full scope of the district court's power to correct a sentence"); 18 U.S.C. § 3582(c) (providing that a court "may not modify a term of imprisonment once it has been imposed," except as set forth in § 3582(c) or "to the extent otherwise expressly permitted by statute or by Rule 35"). Here, Pawlowski invokes the Court's authority pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1), which provides, in relevant part, that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).[6]

---

[6] The compassionate release statute also includes an exhaustion requirement for motions brought by a defendant as opposed to the BOP. A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Pawlowski's counsel sent letters to the Warden at FCI Danbury on April 4 and April 6, 2020, requesting that Pawlowski be released to home confinement. Emergency Mot. Exs. 2 & 3, ECF Nos. 291-2, 291-3. The Government does not dispute that these letters, the first of which was filed 30 days before the instant motion, satisfy the exhaustion requirement in this case. Although the Warden had not made a decision on Pawlowski's request at the time the instant motion was filed, during the May 12 argument, Pawlowski's counsel reported that the Warden has since denied the request. It is not clear that the denial is final, however, as a temporary restraining order issued in the habeas class action on May 12 requires the Warden to "[f]inalize and implement a process that makes full and

By its terms, this provision authorizes a court only to "*reduce* the term of imprisonment," with or without imposing a term of probation or supervised release. *Id.* (emphasis added). The statute "says nothing about temporary release or other such exotic possibilities. In ordinary language, a sentence reduction is far different from a temporary release, and the absence of any reference to temporary release in the statute is, if anything, further confirmation that it was not contemplated." *United States v. Haney*, No. 19-541, 2020 WL 1821988, at *7 (S.D.N.Y. Apr. 13, 2020) (internal citations omitted). The Court therefore concludes—as have numerous other district courts—that § 3582(c)(1)(A) "does not grant the Court the authority to release [a defendant] temporarily until the COVID-19 pandemic abates." *United States v. Pereyra-Polanco*, No. 19-10, 2020 WL 1862639, at *2 (S.D.N.Y. Apr. 14, 2020); *accord United States v. Gales*, No. 19-251-4, 2020 WL 2085146, at *3 (N.D. Ohio Apr. 29, 2020); *Haney*, 2020 WL 1821988, at *7; *United States v. Roberts*, No. 18-528-5, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).[7]

Lacking the authority to grant Pawlowski the temporary relief he seeks, the Court must instead decide whether to grant Pawlowski the relief that *is* available under the statute—a reduction of his 180-month sentence to time served, or approximately 19 months. *See Roberts*, 2020 WL 1700032, at *3 (noting the only way to grant a defendant release from prison under § 3582(c) is

---

speedy use of the home confinement authority under 18 U.S.C. § 3624(b) and the CARES Act" based on criteria which require the Warden to "assign[] substantial weight [in the review process] to the inmate's risk factors for COVID-19 based on CDC guidance" and to "eliminat[e] all requirements that the inmate have served some portion of his or her sentence to be eligible for placement on home confinement." *Martinez-Brooks*, 2020 WL 2405350, at *33.

[7] During the May 12 argument, Pawlowski suggested the term "modify" in § 3582(c) allows a Court to order a defendant's temporary release. The Court disagrees. The statute provides, at the outset, that a court "may not *modify* a term of imprisonment once it has been imposed," except as provided therein. 18 U.S.C. § 3582(c) (emphasis added). But the exception for compassionate release authorizes the court only to "*reduce* the term of imprisonment." *Id.* § 3582(c)(1)(A) (emphasis added); *cf. id.* § 3582(c)(2)(B) (authorizing a court to "*modify* an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure" (emphasis added)).

"to reduce her sentence to time served—in other words to *permanently* release her"). As noted, the Court may grant such a reduction if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement is set forth at U.S.S.G. § 1B1.13, which provides, in relevant part that:

> the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

An application note in the commentary to the policy statement elaborates on the meaning of the phrase "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1. The application note describes three categories of circumstances in which extraordinary and compelling reasons would exist based on the medical condition, age, or family circumstances of the defendant. *Id.* It also includes a catch-all provision that allows the Director of the BOP to determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination

with, the reasons described in [the other three categories]."[8] *Id.* With regard to a defendant's medical condition, the application note provides that extraordinary and compelling reasons exist if

> [t]he defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* cmt. n.1(A)(ii).

As noted, granting Pawlowski compassionate release would require the Court to reduce his term of imprisonment from 180 months to time served, or approximately 19 months, a reduction

[8] Interpreting this application note in light of recent amendments to the compassionate release statute, a majority of the district courts that have considered the issue have concluded that a *court* (not just the BOP) may independently determine whether extraordinary and compelling reasons, other than the reasons listed in the policy statement, exist in a particular case. *See Rodriguez*, 2020 WL 1627331, at *4 (collecting cases). At the time the application note was drafted, only the Director of the BOP could move for compassionate release on an inmate's behalf. In December 2018, however, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id.* at *2. The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. n.4. Given the changes to the statute, numerous courts have found the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases). A minority of courts have found otherwise. *See id.* (collecting cases). Because the Government concedes that, in light of the risk of COVID-19, Pawlowski's medical condition meets the criteria for extraordinary and compelling reasons based on medical condition, Opp'n 15 & n.6, ECF No. 293, the Court need not decide this issue.

of nearly 90 percent. To grant Pawlowski's motion, the Court must find that (1) extraordinary and compelling reasons warrant the reduction, (2) Pawlowski is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.[9] Because the Court is not persuaded a more than 13-year reduction of Pawlowski's sentence is justified under the circumstances, the Court will deny Pawlowski's motion.

With regard to the first factor, Pawlowski argues extraordinary and compelling reasons exist in this case because of his vulnerability to COVID-19 in prison, given his underlying heath conditions, which place him at high risk of serious illness from COVID-19, and the conditions at FCI Danbury, where the disease is present and he is at risk of contracting it. The Third Circuit Court of Appeals has noted that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As the Government notes, moreover, Pawlowski's health conditions, standing alone, would not provide a basis for compassionate release as they appear to be well controlled by medication and do not appear to "present any impediment to his ability to provide self-care in the institution." *See* Opp'n 14, ECF No. 293. The Government concedes, however, that given the risk of COVID-19, Pawlowski's medical condition qualifies as an extraordinary and compelling reason under the application note to the policy statement. *See id.* at 15 & n.6. Specifically, the Government acknowledges that "the risk of COVID-19 presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility,' . . .

[9] The Court must also find the reduction is otherwise consistent with the policy statement. In light of its analysis of the other factors, the Court need not address this factor.

as, due to his comorbidities, [he] may be less able to protect himself against an unfavorable outcome from the disease." *Id.* at 15. With the Government's concession, this element is satisfied.

As to the second factor, the Court finds Pawlowski does not pose a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g). Pawlowski was convicted of corruption-related offenses committed while he held public office. Although his offenses were serious, they were non-violent, and the offense conduct is unlikely to recur as Pawlowski no longer holds public office and is unlikely to do so in the future. Notably, Pawlowski was permitted to remain on bail pending trial and sentencing in the case.[10]

As to the third factor, however, the Court is not persuaded the § 3553(a) factors warrant the substantial reduction in Pawlowski's term of imprisonment that would be required to grant him compassionate release. In contrast to many of the cases in which courts have granted compassionate release during the COVID-19 pandemic, Pawlowski has served only a small fraction of his sentence to date. *See United States v. Bogdanoff*, No. 12-190-1, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020) (noting defendant who had served only seven years of his 18-year sentence had a "much different" case for compassionate release than "others where defendants are at the end of their sentence"); *Rodriguez*, 2020 WL 1627331, at *10 (granting compassionate release to a defendant who had served 17 years of a 20-year sentence and was one year away from eligibility for home confinement). In sentencing Pawlowski only 19 months ago, the Court considered each of the § 3553(a) factors and found they supported a within-Guidelines sentence

[10] At the May 12 argument, the Government conceded Pawlowski does not pose a danger to the community, except as a possible carrier of COVID-19. However, Pawlowski represents that, if released, he "will reside in his longtime home in Allentown with his wife and two children, virtually on house arrest lockdown like the rest of the citizens of Pennsylvania." Emergency Mot. ¶ 12, ECF No. 291.

of 180 months. *See* Sentencing Hr'g Tr. 162-75, Oct. 23, 2018, ECF No. 253. It is difficult to see how the same factors that justified a 180-month sentence a year and a half ago justify a 19-month sentence today. *See Roberts*, 2020 WL 1700032, at *3 (noting the court would be "hard pressed to conclude that, whereas the Section 3553(a) factors justified a forty-eight-month sentence only a month ago, the same factors suddenly justify a time-served sentence today").[11]

The only factors that might arguably weigh in favor of a reduction in light of the COVID-19 pandemic are "the history and characteristics of the defendant," which include Pawlowski's risk factors for severe illness from COVID-19, and the need for the sentence "to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(1), (2)(D). But the remaining factors weigh heavily against a reduction, including "the nature and circumstances of the offense"; the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence"; and "the need to avoid unwarranted sentence disparities." *Id.* § 3553(a)(1), (2)(A)-(B), (6). Although non-violent, Pawlowski's crimes were extraordinarily serious, involving abuse of a position of public

[11] Pawlowski argues the length of the sentence remaining is not a relevant factor, noting this factor is not mentioned in the Attorney General's directive to the BOP to review all inmates with COVID-19 risk factors for home confinement. The BOP's authority to move prisoners to home confinement, however, is separate from the courts' authority to grant compassionate release. Under the compassionate release statute, a court is required to consider the § 3553(a) factors in determining whether to grant release. The amount of the sentence a defendant has served, and the amount that remains to be served, are relevant to a court's consideration of the § 3553(a) factors. *See Rodriguez*, 2020 WL 1627331, at *10 (noting that where defendant had served 17 years of a 20-year sentence and was one year away from eligibility for home confinement, "[k]eeping him in prison for one more year makes a marginal difference to his punishment").

Pawlowski also directs the Court to *United States v. Foreman*, No. 19-362, 2020 WL 2315908 (D. Conn. May 11, 2020), in which a court granted compassionate release to an inmate in the women's camp at FCI Danbury who had served only two and a half months of a 12-month sentence for tax evasion. While *Foreman* shows that a substantial reduction may be permissible in a compassionate release case, the original sentence in that case was a fraction of the Pawlowski's original sentence. In the Court's view, the § 3553(a) factors do not support the same result here.

trust. In imposing sentence, the Court found a significant period of incarceration was required not only in light of the seriousness of the public corruption offenses in this case but also to promote respect for the law and send a strong message of deterrence. Reducing the 180-month sentence imposed to 19 months would undermine these goals. *See United States v. Walter*, No. 18-834-6, 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020) (declining to convert a defendant's sentence "to one of home confinement, when he ha[d] served just 17 months of a 62-month term of incarceration," where doing so "would disserve [several] important § 3553(a) factors"); *United States v. Ebbers*, No. 02-1144-3, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (holding that in considering the § 3553(a) factors, a court "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence"). Finally, as the Government notes, reducing Pawlowski's sentence to time served would result in his serving less time than Michael Fleck, his former campaign manager and coconspirator, who pleaded guilty and was sentenced to 60 months.

The Court finds the § 3553(a) factors are dispositive here. Because those factors do not support the reduction necessary to grant Pawlowski compassionate release, the Court will deny Pawlowski's motion.

**CONCLUSION**

Because the Court finds the reduction necessary to grant Pawlowski compassionate release is not warranted based on the § 3553(a) factors, and because the Court lacks authority to grant his request for temporary release, the Court must deny Pawlowski's motion. While the Court lacks authority to grant Pawlowski temporary release, the BOP possesses the authority to do so under the furlough statute, 18 U.S.C. § 3622, and/or under 18 U.S.C. § 3624 and the CARES Act.

Nothing in this Memorandum is intended to preclude or discourage the BOP from exercising its authority to temporarily release Pawlowski on home confinement to reduce the threat to him until the COVID-19 crisis abates.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.