**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-390** |
| **EDWIN PAWLOWSKI** | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Edwin Pawlowski has presented his second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). He does not present an "extraordinary and compelling reason" for this remedy, and the motion should be denied.

Pawlowski, now at FCI Cumberland, continues to serve his 180-month sentence for political corruption offenses. His minimum release date is August 3, 2031. He has served approximately 41 months, and has credit for good conduct time of approximately 5 months, and therefore has served approximately 46 months (25%) of the sentence. He has not committed any disciplinary infraction while in custody.

Pawlowski first sought release immediately after the commencement of the pandemic in 2020. On May 18, 2020, this Court denied the motion.

At the time, Pawlowski presented hypertensive heart disease, COPD, dyspnea (shortness of breath), and sleep apnea, and he has only one lung as a result of a pulmonectomy decades ago. The Court accepted the government's concession that these

conditions, according to CDC guidance, placed Pawlowski at risk of severe illness were he to contract COVID-19, and that he did not present a danger to the community. The Court concluded, however, that release was not warranted due to the fact that Pawlowski had only served a "small fraction" of his sentence. The Court stated, "Although non-violent, Pawlowski's crimes were extraordinarily serious, involving abuse of a position of public trust. In imposing sentence, the Court found a significant period of incarceration was required not only in light of the seriousness of the public corruption offenses in this case but also to promote respect for the law and send a strong message of deterrence. Reducing the 180-month sentence imposed to 19 months would undermine these goals." *United States v. Pawlowski*, 2020 WL 2526523, at *7 (E.D. Pa. May 18, 2020).

Pawlowski appealed, and the Third Circuit affirmed this Court's ruling. *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020).

Pawlowski's new motion is dated February 10, 2022. It was not docketed at that time. A paper copy was received by government counsel in mid-March. The government promptly obtained updated medical records, and is now filing both Pawlowski's motion on his behalf, and this response.

The new motion seeks release based on Pawlowski's health, and the recent spread of COVID-19 due to the Omicron variant.

Pawlowski's health is largely unchanged. Now 56 years old, he continues to present hypertensive heart disease without heart failure, sleep apnea, and hyperlipidemia. He had one lung removed several decades ago. His last medical appointment, according to the BOP medical records provided to us during the past week and attached as Exhibit

A, was on January 31, 2022, for an eye exam, which addressed his condition of herpes with ocular complications and keratitis (corneal inflammation). His conditions appear well-maintained with medication provided by BOP.

Notably, he is now fully vaccinated against COVID-19. He received a Moderna vaccine dose on February 23, 2021. After initially declining the second dose, he received the second Moderna dose on April 21, 2021. He received a Pfizer vaccine booster on December 15, 2021.

The attached medical records show that Pawlowski regularly receives extensive medical care, with one possible exception.

Pawlowski complains that he suffers from painful rashes and infections, which he attributes to a post-COVID condition. He further states that BOP will not provide him with the medication that is appropriate to treat this condition. None of this is supported by the medical records.[1]

Pawlowski has never been diagnosed with COVID-19. As for a rash, on March 25, 2021, a nurse practitioner wrote:

> Patient still has rash to bilateral hands, arms, and trunk area. He has been treated multiple times with ivermectin for "Scabies" with no resolve- last treated with tapering prednisone and rash goes into remission and has returned upon completion of tapering. He has visible abrasions due to scratching pruritic papules. I will attempt to have Atarax 25 mg po Bid x 14 days prescribed for patient.

---

[1]  In our experience, BOP notes any concern about the unavailability of medication. Here, for instance, on June 14, 2021, Pawlowski stated to a pharmacist that Maalox had been recommended for him but was then unavailable in the commissary. The pharmacist promptly issued a prescription for the medication so Pawlowski could receive it. Exh. A at p. 30.

Exh. A at p. 53. A prescription for hydroxyzine tablets (Atavax is the brand name for that medication) was issued that day.

The next reference to a skin condition was on June 4, 2021, when the examiner noted dermatitis on "hands and between fingers." The examiner prescribed a 14-day course of betamethasone cream. *Id.* at p. 32. At a thorough checkup on September 22, 2021, no remaining condition was noted. The entry for "skin" states: "warm, dry; no open areas or concerning lesions." *Id.* at p. 21. There is no subsequent reference to any persistent problem.

The only new matter of note during the past year arose on April 22, 2021, when Pawlowski was sent to a local hospital upon complaining of chest pain and shortness of breath. Following a thorough evaluation, the assessment was that he suffered from gastroesophageal reflux disease (GERD), and he was advised to take Maalox and pantoprazole tablets. *Id.* at p. 40.

A CT scan at that time presented an abnormal finding of questionable thickening in the distal esophagus. Examiners recommended that he receive an upper endoscopy to rule out any serious condition, such as cancer. A doctor wrote: "Edwin needs an evaluation by a gastroenterologist to investigate some thickening of the wall of the small intestine around his gallbladder. The cause of this could be something as benign as reflux, or as serious as cancer, so it is critical that he not be lost to follow-up." *Id.* at p. 142.

Pawlowski was sent for an evaluation by a gastroenterology specialist on September 20, 2021, who identified no separate issue, confirmed the diagnosis of GERD, and repeated the recommendation of an upper endoscopy. *Id.* at p. 130-31. It is not clear

- 4 -

whether the upper endoscopy has been performed. If it has not, Pawlowski should promptly raise the issue administratively.

In these circumstances, compassionate release is not warranted. Pawlowski has been fully vaccinated, and is held at an institution that currently reports no positive COVID cases in the inmate population. When he filed his motion in 2020, before the availability of vaccines, the government agreed that presentation of a risk factor in relation to COVID-19 stated an "extraordinary and compelling reason" allowing for consideration for compassionate release. Now that he has been provided with an effective vaccine, that is no longer the case. *See, e.g.*, *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (in addressing whether a state inmate is "under imminent danger of serious physical injury," to avoid the three-strikes rule for prisoner litigation, the Court takes "judicial notice that, to the extent Garrett believes that he remains at serious risk of physical injury or death, effective COVID-19 vaccines are widely available, and Garrett has not shown he lacks proper access to the vaccine. *Cf. United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021) ('widespread availability of the COVID-19 vaccine . . . eliminates' need for compassionate release)."); *United States v. Williams*, 2021 WL 4860170, at *3 (N.D. Ind. Oct. 19, 2021) (DeGuilio, C.J.) ("An overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release."); *United States v. Lopez-Batista*, No. 16-358, ECF No. 94 (E.D. Pa. Aug. 23, 2021) (Sanchez, C.J.) (diabetes and obesity do not warrant release in light of vaccination).

Pawlowski at great length questions the efficacy of the vaccines, and the ability of BOP to mitigate the harm of COVID-19. But the vaccines in fact have shown remarkable success in preventing severe illness from COVID-19. And BOP's efforts, while of course not perfect in this novel and unprecedented crisis, have been impressive. It is true that there have been 288 deaths of inmates in BOP custody (in an inmate population that was 157,000 at the outset of the pandemic), but at the same time there have been close to one million deaths of Americans in the general population. These numbers are both tragedies, but clearly BOP, through extensive mitigation measures and provision of prompt and thorough medical care, has done well in limiting the harm in its institutions.

The spike in Omicron cases followed the same pattern. "[U]nfortunately, the increased infection rate reflects a surge of positive cases in American society as a whole due to the Omicron variant; such surges are not limited to BOP facilities." *United States v. Grant*, 2022 WL 170860, at *8 (D.N.J. Jan. 19, 2022) (Vazquez, J.). And "given the speed with which Omicron is spreading through the unincarcerated population, I cannot say with any confidence that defendant would be safer on the outside than he is where he is." *United States v. Jaber*, 2022 WL 35434, at *3 (S.D.N.Y. Jan. 4, 2022) (McMahon, J.); *see also United States v. Daniels*, 2022 WL 164543, at *6 (M.D. Tenn. Jan. 18, 2022) (Richardson, J.) ("Moreover, it is beyond dispute that persons outside of prison are extremely susceptible to the current COVID-19 variant (Omicron). So to the extent that Defendant's argument is that he needs to be released into the community to better evade COVID-19, the argument is a non-starter because there is no reason to conclude that his risk of infection from COVID-19 would be reduced were he released from prison.").

- 6 -

And the number of positive cases in BOP facilities has recently plummeted along with the case numbers in the greater society. *United States v. Godwin*, 2022 WL 526007, at *3 (W.D.N.C. Feb. 22, 2022) (Reidinger, C.J.) (the drop in cases from January to February 2022 at FMC Carswell "reflect[s] not only the typical 'spike' of the omicron variant but also reflect the significant measures that BOP has taken to protect the health of its inmates from the virus," including through an effort to vaccinate the entire inmate population); *United States v. Herring*, 2022 WL 633871, at *4 (S.D.N.Y. Mar. 4, 2022) (McMahon, J.) (the "temporary surge in COVID cases at FCI Williamsburg is typical of the pattern of cases that the highly infectious, but mildly virulent Omicron variant has caused across the nation—both inside and outside prison walls.").

At FCI Cumberland, where Pawlowski is held, the Omicron infection peaked on January 23, 2022, when there were 58 positive cases in the inmate population. All recovered. Currently, there are no positive cases, in a population of 1,223. Throughout the pandemic, a total of 347 current Cumberland inmates have been infected and recovered; there has been no death at the institution.

Most notably, nearly all courts to recently address the issue, including this Court, agree that "while the Omicron variant appears to cause a greater number of breakthrough cases in vaccinated individuals than prior strains of COVID-19 have, the existing, FDA-approved COVID-19 vaccines are still very effective at preventing serious illness." *United States v. Lipsey*, 2022 WL 180725, at *2 (D. Ariz. Jan. 20, 2022) (Snow, C.J.) (quotation marks omitted). Judge Bartle recently stated: "While the Omicron variant has led to a surge of cases in prisons, it has also led to a surge of cases everywhere and the

- 7 -

Pfizer vaccine, particularly with a booster shot, is still highly effective at preventing serious cases and hospitalizations or death." *United States v. Gordon*, 2022 WL 377395, at *5 (E.D. Pa. Feb. 7, 2022) (Bartle, J.). Other courts agree. *See, e.g.*, *United States v. Graham*, 2022 WL 254623, at *4 (E.D. Pa. Jan. 27, 2022) (Sanchez, C.J.) ("The current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant."); *United States v. Butler*, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) (Levy, J.) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant. In other words, given that COVID-19 vaccines mitigate the potential harm of the Delta and Omicron variants, it is not an 'extraordinary and compelling reason' to grant compassionate release."); *United States v. Webb*, 2022 WL 206174, at *4 (E.D. Pa. Jan. 24, 2022) (Slomsky, J.) (the court earlier denied relief based in part on the fact that the defendant was vaccinated, and "neither the Delta nor the Omicron variants significantly alter the Court's prior analysis in its decision denying Defendant's First Motion."); *accord United States v. Smith*, 2022 WL 391959, at *4 (E.D. Mich. Feb. 8, 2022) (Ludington, J.); *United States v. Davidson*, 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022) (Berman, J.); *United States v. Cunningham-Quick*, 2022 WL 327029, at *2 (M.D.N.C. Feb. 3, 2022) (Tilley, J.).

The threat of COVID-19 therefore does not present a basis for relief in this case at this time. Nor does an apparent delay in examination of Pawlowski's gastrointestinal condition. At present, with regard to that condition, Pawlowski does not present "a

serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A). Instead, if he does not promptly receive further examination, he should raise the matter in the administrative process. There is an established administrative process for an inmate to present complaints, including the option for appeal to higher authorities in BOP. The defendant has not availed himself of this process to present any complaints about his medical treatment. *See, e.g.*, *United States v. Grant*, 2022 WL 558347, at *5 (E.D. Pa. Feb. 24, 2022) (Sanchez, C.J.) (complaints by pregnant inmate regarding prison conditions should initially be presented in an administrative forum, and not in a motion for compassionate release); *United States v. Williams*, 2021 WL 2400860, at *4 (W.D. Wash. June 11, 2021) (Jones, J.) ("if inadequate medical care is an issue, Mr. Williams can pursue available administrative means to address his issues.").

In *United States v. Miller*, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021), Judge Charles Breyer, a longtime member of the Sentencing Commission, explained that the compassionate release guideline "refers to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate. . . . Mr. Miller has alternative avenues to obtain improved medical care. Prisoners routinely bring constitutional claims based on inadequate medical care. . . . Mr. Miller's argument that inadequate medical care makes him eligible for compassionate release under

§ 3582(c)(1)(A) . . . suggests that Congress intended that statute to serve as an end-run around this established framework. Not so."

The administrative remedy process is set forth in 28 C.F.R. § 542.10 *et seq*. These BOP regulations provide for an expedited response to administrative requests "determined to be of an emergency nature which threatens the inmate's immediate health or welfare." 28 C.F.R. § 542.18. Under the Prison Litigation Reform Act, an inmate filing a prison-conditions lawsuit must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). These procedural rules are based on the Supreme Court's consistent recognition that courts are "ill equipped" to deal with problems of prison administration. *Procunier v. Martinez,* 416 U.S. 396, 405 (1974). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

For all of these reasons, the new motion for compassionate release should be denied.

Respectfully yours,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals


*/s Michelle L. Morgan*
MICHELLE L. MORGAN
Chief, Corruption & Civil Rights Section
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

> Mr. Edwin Pawlowski
> No. 76166-066
> FCI Cumberland
> P.O. Box 1000
> Cumberland, MD  21501

*/s Michelle L. Morgan*
MICHELLE L. MORGAN
Assistant United States Attorney

Dated:  March 21, 2022.